## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

C.A. NO. _____

| | |
|---|---|
| **BOSTON BEER CORPORATION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) |
| **JUDD HAUSNER,** | ) |
| **ANCHOR BREWING COMPANY LLC AND** | ) |
| **ANCHOR BREWERS & DISTILLERS LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## VERIFIED COMPLAINT

For its Verified Complaint against defendants Judd Hausner ("Hausner"), Anchor Brewers & Distillers LLC and Anchor Brewing Company LLC (collectively, "Anchor"), plaintiff Boston Beer Corporation ("Boston Beer") alleges as follows:

## NATURE OF THE ACTION

1.      This action is brought to enforce the post-employment non-disclosure and non-compete covenants contained in the employment agreement between Boston Beer and one of its senior sales employees, defendant Judd Hausner.  A copy of Hausner's employment agreement ("Employment Agreement") is annexed hereto as <u>Exhibit A</u>.  Hausner has voluntarily left his employment at Boston Beer, and has announced that he is taking a key sales and marketing position with Anchor, a direct competitor of Boston Beer, based in San Francisco, California, just as he was for Boston Beer, and that he is on the "fast track" to joining the executive board, reporting directly to Anchor's Chief Executive Officer.  As an employee of Anchor, Hausner will be marketing and selling products that are directly competitive with those he sold for Boston Beer, and will likely be working with the same distributors with whom he worked for Boston

13619863.1

Beer. He is thus in a position to, and will inevitably, use Boston Beer's confidential business information in direct competition with Boston Beer.

2.  By this action, Boston Beer seeks, among other things, a preliminary and permanent injunction prohibiting Hausner from (a) working for Anchor in the small, niche market in which Boston Beer and Anchor compete, for a period of one year from the date he last received compensation from Boston Beer, and (b) using or disclosing Boston Beer's confidential business information to compete wrongfully against it. This narrow restraint is necessary to protect Boston Beer from the irreparable harm it will suffer if Hausner is allowed to compete directly with it.

3.  Further, because Hausner has breached his Employment Agreement, Boston Beer also seeks to recoup training costs pursuant to Paragraph 7 of his Employment Agreement.

## FACTUAL BACKGROUND

### The Parties and Jurisdiction

**Boston Beer**

4.  Boston Beer is a Massachusetts corporation with its principal place of business at One Design Center Place, Boston, Massachusetts. It is in the business of brewing and marketing a line of beers, ales, ciders, malt beverages and lagers primarily under the famous Samuel Adams family of trademarks ("Boston Beer Products").

5.  As the sixth generation of Koch brewmasters, C. James Koch, Chairman of Boston Beer, entered the brewing industry more than twenty-five years ago. He began by brewing test batches of his family recipe, introducing the beer made with his family recipe, "Samuel Adams," to the Boston area. Since that time, he has devoted his full time efforts to Boston Beer and the beer industry, and has grown the business to be a major player in the "Better Beer" market throughout the United States and internationally. Boston Beer is famous for the

quality of its many products, the unique techniques used by it to sell and market its products, and for the training it provides to its employees.

6.      Boston Beer has always been headquartered in Massachusetts and identified with Massachusetts since its founding in 1984. It is a substantial employer in Massachusetts. Its executive officers work in Massachusetts, and it administers its national and international business from Massachusetts. Sales personnel like Defendant Hausner are located throughout the United States, and often move from state to state during the course of their careers with Boston Beer. However, all salespersons, including Hausner, maintain significant, regular contact with the Massachusetts headquarters; salespersons regularly return to Massachusetts for business, strategy and planning meetings, national sales meetings and for training sessions; and salespersons are paid and their employment is administered from the Massachusetts headquarters.

7.      Boston Beer operates in the "Better Beer" category of the beer industry. Boston Beer Products are marketed and priced for the niche market in top quality, higher-priced beers, ales and lagers. The principal competition in the Better Beer market comes from other craft beers, ales and lagers, as well as from certain imported brands and domestic specialty lines. Competition for distributors and other customers in this market is keen. The Better Beer category constitutes approximately 20% of total beer sales nationwide, with mainstream domestic beers constituting the remaining 80%. The narrow non-competition provision at issue in this case restricts Defendant Hausner from competing only in this Better Beer market. Faced with fierce competition from much larger beer companies as well as other craft brewers, Boston Beer has to be particularly vigilant about protecting itself against unfair competition from former employees who know its strategic plans and are in a position to compete unfairly with it.

**Anchor**

8.      Defendant Anchor Brewing Company, LLC is, upon information and belief, a California limited liability company with a principal place of business at 1705 Mariposa St., San Francisco, California.  Defendant Anchor Brewers & Distillers, LLC is, upon information and belief, a Delaware limited liability company with a principal place of business at 1705 Mariposa St., San Francisco, California.

9.      Anchor is a producer and marketer of several craft beers and artisan spirits such as Anchor Steam, Anchor Porter, Anchor Summer, and Anchor Bock (referred to throughout as the "Anchor Products").  Anchor sells the Anchor Products in the United States, Canada, Asia, and Europe.  Anchor sells its products in various states throughout the United States, including in Eastern and Western Massachusetts through a distributor, Horizon Beverage.  Accordingly, this Court has personal jurisdiction over Anchor pursuant to Mass. G.L. c. 223A, § 3.

10.     The Anchor Products compete directly with the Boston Beer Products in the Better Beer niche market throughout the United States.

**Hausner**

11.     Defendant Hausner is an individual currently residing in San Francisco, California.  This Court has personal jurisdiction over Hausner because, among other things, he contractually consented to submit to jurisdiction in Massachusetts in his Employment Agreement, and had sufficient minimum contacts with the Commonwealth.  Among other things, Hausner visited Massachusetts for annual meetings and trainings in connection with his employment with Boston Beer, he was paid from Massachusetts, and his employment was administered from Massachusetts.

12.     On or about July 11, 2007, Hausner began work for Boston Beer as a Sales Representative in Manhattan, New York.  In October of 2007, Hausner's title was changed to Account Manager.  On July 1, 2008, Boston Beer transferred Hausner to Los Angeles,

13619863.1

California.  Approximately nine months later, on April 1, 2010, Boston Beer promoted Hausner to District Manager for the North Bay Area in California, and relocated him to San Francisco, California.  On September 8, 2011, Hausner voluntarily resigned from Boston Beer.

13.     As a District Manager for Boston Beer, Hausner was responsible for marketing and selling Boston Beer Products to four distributors and approximately 30-40 retail accounts, for which he was the face of Boston Beer.  He was responsible for maintaining and growing Boston Beer's business relationships with these customers and distributors, by carrying-out Boston Beer's strategic plans for these customers and marketing its brand in northern California.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (a)(1), in that it is an action between a Massachusetts corporation, on the one hand, and a California resident and a California corporation, on the other.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(3).

## Hausner's Employment Agreement

15.     As a condition precedent to his employment with Boston Beer, Hausner was required to execute an Employment Agreement.  Hausner's Employment Agreement was executed on December 30, 2006, at the time he accepted a job with Boston Beer.

16.     Boston Beer taught Hausner everything he knows about the beer business.  His expertise in the business is Boston Beer, exclusively.  His training has been in the unique sales and marketing tools and methodologies developed by Boston Beer.  These tools and methodologies are part of the Confidential Information which Boston Beer seeks to protect by preventing Hausner from working for a direct competitor.

17.     To protect its Confidential Information and customer good will from misuse and misappropriation by departed employees who have access to such information and participate in the creation and maintenance of customer good will, Boston Beer requires all employees such as Hausner to execute employment agreements containing provisions prohibiting the use or

13619863.1

disclosure of Confidential Information, and going to work for direct competitors in the niche

Better Beer market.

18.     Thus, the Employment Agreement signed by Hausner contains post-employment

restrictive covenants.  Paragraph 3 of the Employment Agreement is a non-disclosure clause

protecting Boston Beer's confidential information (the "Non-Disclosure Clause").  Paragraph 4

is a non-competition clause (the "Non-Compete Clause").

19.     The Non-Disclosure Clause defines Boston Beer's trade secrets as its "techniques,

recipes, formulas, programs, processes, designs and production, distribution, business and

marketing methods and manuals, training methods, pricing programs, customer contracts or other

arrangement, materials and manuals" (hereinafter the "Confidential Information").  By signing

the Agreement, Hausner acknowledged and agreed that the Confidential Information is "of a

confidential and secret character, of great value and proprietary to the Company."  Pursuant to

the Non-Disclosure Clause, Hausner agreed not to use or disclose the Confidential Information

during or after his employment, to take reasonable steps to protect the Confidential Information

from loss or disclosure, and to return any materials that may contain Confidential Information

upon termination from Boston Beer.

20.     The Non-Compete Clause is narrowly tailored to protect Boston Beer's

Confidential Information and customer good will in the Better Beer market.  To protect that

Confidential Information and customer good will, the Non-Compete Clause precludes Hausner

only from engaging in the "importing, production, marketing or distribution to distributors of any

beer or ale brewed outside of the United States which is imported into the United States or any

American beer or ale having a wholesale price within twenty-five percent (25%) of the wholesale

price of any of [Boston Beer's] products" for one year from the date on which Hausner last

receives compensation in any form from Boston Beer.  It is this narrow range of products that

comprise the Better Beer market, and Boston Beer's Non-Compete clause is designed to

13619863.1

specifically prevent the disclosure of its Confidential Information to companies within the Better Beer market.

21.     Anchor Products are sold within 25% of the wholesale price of the Boston Beer Products.

22.     In the Paragraph 6 of the Agreement, Hausner agreed as follows:

> Remedy for Breach.  The employee expressly recognizes that any breach of this Agreement by him or her will to result in irreparable injury to the Company and agrees that, in addition to any other rights or remedies which the Company may have, the Company shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction either in law or in equity, to obtain damages for any breach of this Agreement; to enforce the specific performance of this Agreement by the Employee; and to enjoin the Employee from activities in violation of this Agreement.  In any such action, the Company shall be entitled to recover the costs and attorney's fees incurred by it in such action.

23.     The Employment Agreement is governed by Massachusetts law.  Paragraph 12, the governing law clause, provides that the "validity, interpretation and performance of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts."

24.     The Agreement further provides that "Any dispute between Employee and the Company shall be litigated exclusively in the state or federal courts of The Commonwealth of Massachusetts, to whose jurisdiction Employee hereby agrees to submit."

25.     Hausner agreed in the Agreement that in any action, such as this one, to enforce the terms of the Agreement, "the Company shall be entitled to recover the costs and attorney's fees incurred by it in such action."

26.     Hausner was aware that working for Anchor is prohibited by the Agreement, and that Boston Beer was likely to seek to enforce the Agreement.  He indicated this in conversations with Boston Beer personnel during the final days of his employment by the Company.

## As District Manager, Hausner had
## Access to Boston Beer's Confidential Information

27.     As District Manager, Hausner traveled to Massachusetts on at least an annual basis to attend Annual Meetings.  During these and other strategy meetings, Hausner became privy to Boston Beer's sales strategies, marketing plans and pricing strategies with distributors, including local pricing strategies, distribution levels, specific distribution targets, and sales incentive program details.  All of this Confidential Information is guarded, secret and confidential.

28.     As a District Manager, Hausner had significant, substantial, substantive and repeated contact with the customers of Boston Beer.  He was paid to develop and maintain Boston Beer's good will with its customers, both distributors and retailers.  Boston Beer provided him with substantial resources to do this; with extensive sales training that is unique to Boston Beer; and access to Boston Beer's Confidential Information.

29.     As a District Manager, he was privy to Boston Beer's plans and strategies to compete with its competitors in the Better Beer market such as Anchor.  As an example of this, just last month Hausner attended his divisional sales meetings in San Diego, California where he learned about Boston Beer's secret brand initiatives for 2012 as well as for the remainder of 2011, non-public sales and marketing information, and specific strategies for beating the competition like Anchor.  This confidential information included Boston Beer's secret plan for introducing new products in 2012, as well as the sales and pricing numbers for the customers serviced by the entire Western Division of the Company (extending through the western states of the United States and into Canada).  These secret plans and confidential data were disclosed to Hausner to enable him to compete more effectively against direct competitors such as Anchor.

30.     Suddenly, Hausner is now an employee of this direct competitor.  He knows Boston Beer's plans to defeat Anchor in the highly competitive Better Beer market.  To properly

do his job for his new employer, Hausner cannot help but use the Confidential Information and trade on the customer relationships he was paid to develop for Boston Beer. It must inform his decisions about pricing strategies with particular customers, and introducing new products or new promotions to counter what he knows Boston Beer is planning. The fact that everything he knows about the beer business was learned from Boston Beer, makes this transfer of information even more likely. The fact that he will be doing sales <u>and</u> marketing, and thus participating in the development of Anchor's plans and strategies to beat the competition in the Better Beer market, reinforces this conclusion. It is inevitable that he will interfere with Boston Beer's legitimate business interests (protection of Boston Beer's Confidential Information and customer good will) in his new position with Anchor.

### Hausner's Employment with Anchor is a Breach of the Employment Agreement and will Result in Irreparable Harm to Boston Beer

31.     On the morning of September 8, 2011, Hausner informed his manager, Bridget Regan, that he was resigning his employment, effective September 22, 2011, in order to take a position with Anchor. Mr. Hausner informed Ms. Regan that in his new position would involve both sales <u>and</u> marketing, and that he was on a "fast-track" to joining Anchor's executive board. Hausner's employment with Anchor is thus a breach of the Non-Compete Clause.

32.     Hausner informed Ms. Regan that he was aware that under the terms of his Employment Agreement with Boston Beer, employment with Anchor violated his Employment Agreement, in particular, the Non-Compete Clause. In fact, he informed Ms. Regan that he provided Anchor with a copy of the Employment Agreement to Anchor and was advised by Anchor that he did not need to worry about the agreement. He informed Boston Beer that he was going to go to work for Anchor nevertheless, because he did not believe the Non-Compete Clause in his Employment Agreement was enforceable.

13619863.1

33.     Upon information and belief, Anchor has solicited and hired Hausner for the specific purpose of marketing and selling Anchor Products in competition with Boston Beer Products in California and elsewhere.

34.     Upon information and belief, Anchor has solicited and hired Hausner in order to benefit from the Confidential Information Hausner acquired during his long tenure with Boston Beer.  If Hausner is permitted to work for Anchor, Hausner will disclose to Anchor Boston Beer's Confidential Information in breach of the Non-Disclosure Clause and his fiduciary duty to Boston Beer.  Such disclosure will result in irreparable harm to Boston Beer and will unfairly benefit Anchor in its head-to-head competition with Boston Beer.

35.     Upon information and belief, Anchor has solicited and hired Hausner to obtain, among other things, the benefit of Boston Beer's customer contacts in California and other states. If Hausner is allowed to work for Anchor, Hausner and Anchor will be in a position to usurp Boston Beer's goodwill, giving Anchor an unfair competitive advantage in its head-to-head competition with Boston Beer.

**COUNT I**

**Against Hausner**

**BREACH OF CONTRACT:  Breach Of The Non-Compete Clause**

36.     Boston Beer repeats the allegations in paragraphs 1 through 35, supra.

37.     Anchor produces and sells Anchor Products.  The Anchor Products compete directly with Boston Beer Products in the Better Beer market.  Hausner has been hired to market and sell Anchor Products to distributors  and retailers.  This is a breach of the Non-Compete Clause.

38.     Hausner has breached the Non-Compete Clause in the Agreement by accepting employment with Anchor.

39.     The Non-Compete Clause is enforceable to protect Boston Beer's legitimate business interests, including its legitimate interests in protecting its Confidential Information.

40.     Hausner's breach of the Non-Compete Clause has damaged Boston Beer and threatens it with immediate and irreparable harm, in that Boston Beer's Confidential Information will be used in competition with it by a direct competitor.

41.     Boston Beer has no adequate remedy at law.

## COUNT II

### Against Hausner

### BREACH OF CONTRACT:  Breach of the Non-Disclosure Clause

42.     Boston Beer repeats the allegations in paragraphs 1 through 41, supra.

43.     Upon information and belief, Hausner, through his employment with a direct competitor, Anchor, has disclosed or will inevitably disclose, Boston Beer's Confidential Information.  Such disclosure constitutes misappropriation and improper use of Boston Beer's Confidential Information in breach of the Non-Disclosure Clause.

44.     Hausner's breach or threatened breach of the Non-Disclosure Clause has damaged or will damage Boston Beer and threatens it with immediate and irreparable harm.

45.     Boston Beer has no adequate remedy at law.

## COUNT III

### Against Anchor

### INTENTIONAL INTERFERENCE WITH CONTRACT

46.     Boston Beer repeats the allegations of paragraphs 1 through 45, supra.

47.     Upon information and belief, at the time Anchor hired Hausner it was aware of and had seen and read the Employment Agreement between Hausner and Boston Beer.

48.     Upon information and belief, Anchor has solicited and hired Hausner for the specific purpose of selling Anchor Products in direct competition with Boston Beer.

13619863.1

49.     Upon information and belief, Anchor hired Hausner in order to obtain the benefit of the Confidential Information Hausner acquired during his tenure with Boston Beer.

50.     Upon information and belief, Anchor hired Hausner to obtain the benefit of the customer good will developed by Boston Beer with its customers.

51.     The foregoing conduct was undertaken for an improper purpose and/or by improper means, and constitutes unlawful interference with Boston Beer's Employment Agreement with Hausner.  Boston Beer has been or will be damaged thereby.

52.     Boston Beer has no adequate remedy at law.

## COUNT IV

### Against Hausner and Anchor

### MISAPPROPRIATION OF TRADE SECRETS

53.     Boston Beer repeats the allegations in paragraphs 1 through 52, supra.

54.     Boston Beer's Confidential Information, constitutes protectable confidential information or trade secrets.

55.     Boston Beer took reasonable steps to preserve the secrecy of the Confidential Information, including by limiting access to this information and requiring its employees to sign employment agreements such as the one signed by Hausner.

56.     Hausner's inevitable use and disclosure of the Confidential Information, and Anchor's receipt and use of same, is wrongful.

57.     Both Hausner and Anchor have benefitted and/or will benefit improperly and unjustly from access to and use of the Confidential Information.

58.     As a result of these wrongful actions, Boston Beer has suffered and/or will suffer irreparable harm.

59.     Boston Beer has no adequate remedy at law.

60.

## COUNT V

**Against Hausner**

## BREACH OF FIDUCIARY DUTY

61.     Boston Beer repeats the allegations in paragraphs 1 through 59, supra.

62.     As an employee and former employee of Boston Beer, Hausner owes a fiduciary duty of loyalty, good faith and due care to Boston Beer.

63.     Hausner has breached and/or will inevitably breach these duties by using and/or disclosing the Confidential Information to Anchor to compete with Boston Beer.

64.     As a result of these wrongful actions, Boston Beer has suffered and/or will suffer damages and irreparable harm.

65.     Boston Beer has no adequate remedy at law.

## COUNT VI

**Against Hausner and Anchor**

## UNJUST ENRICHMENT

66.     Boston Beer repeats the allegations in paragraphs 1 through 64, supra.

67.     Hausner and Anchor have been and/or will be unjustly enriched by their unlawful conduct, including receiving the financial benefits derived from the unlawful use of Boston Beer's Confidential Information.

68.     As a result of their wrongful actions Boston Beer has suffered and/or will suffer damages and irreparable harm.

69.     Boston Beer has no adequate remedy.

13619863.1

## COUNT VII

### Against Hausner

## BREACH OF PARAGRAPH 7 OF THE
## EMPLOYMENT AGREEMENT

70.     Boston Beer repeats the allegations in paragraphs 1 through 70, supra.

71.     Pursuant to paragraph 7 of the Agreement, Hausner is required to repay Boston Beer $1,000 for each training day provided to Hausner during his employment, upon his voluntary separation from Boston Beer and his acceptance of other employment which breaches the Employment Agreement.

72.     Hausner received more than 24 training days from Boston Beer.

73.     Hausner voluntarily resigned his employment with Boston Beer to accept employment with Anchor, a breach of the Employment Agreement.

74.     Hausner is therefore indebted to Boston Beer  pursuant to paragraph 7 of the Employment Agreement.

75.     Hausner has failed to pay Boston Beer money he owes to it, causing damage to Boston Beer.

WHEREFORE, Boston Beer respectfully requests that the Court:

1.     Enter a preliminary and permanent injunction prohibiting Hausner from working for Anchor in the importing, production, marketing or distribution, directly or indirectly, of the Anchor Products (the "Services") for one year from the date on which Hausner last receives compensation in any form from Boston Beer (the "Period").

2.     Enter a preliminary and permanent injunction restraining and enjoining Hausner from disclosing to Anchor, or to any other person, or from otherwise using, the Confidential Information of Boston Beer.

13619863.1

3.      Enter a preliminary and permanent injunction restraining and enjoining Anchor from accepting any Services directly or indirectly from Hausner during the Period.

4.      Enter a preliminary and permanent injunction restraining and enjoining Anchor from receiving, obtaining, using or disclosing any of Boston Beer's Confidential Information obtained from Hausner.

5.      Enter judgment in favor of Boston Beer for damages, in an amount to be determined at trial, on Counts I through VII of this Verified Complaint.

6.      Enter judgment in favor of Boston Beer for costs, attorneys' fees and such other relief as the Court deems just and appropriate.

BOSTON BEER CORPORATION

By its attorneys,

David S. Rosenthal (BBO #429260)
Erika M. Collins (BBO #657243)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
617-345-1000

Date:  September 27, 2011

## VERIFICATION

I, Martin Roper, the President and Chief Executive Officer of the Boston Beer Corporation, hereby state that I have read the foregoing Verified Complaint and am familiar with the contents thereof, and that the facts set forth therein are true by my own personal knowledge and in accordance with the business records of the company, except those facts set forth on information and belief, and that as to those allegations, I believe them to be true.

Signed under the pains and penalties of perjury this 26th day of September, 2011.

_____

Martin Roper